UNITED STATES of America, Appellee,

v.

Rubiel MARIN–CIFUENTES, Appellant.

UNITED STATES of America, Appellee,

v.

Dairo Jesus RIOS, Appellant.

UNITED STATES of America, Appellee,

v.

Leonardo H. QUITIAN, Appellant.

Nos. 88–5162, 88–5163 and 88–5164.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 17, 1988.
Decided Jan. 19, 1989.

Terry L. Hegna, St. Paul, Minn., for Marin.

Rick E. Mattox, Eagan, Minn., for Quitian.

Barry V. Voss, Minneapolis, Minn., for Rios.

Jon M. Hopeman, Asst. U.S. Atty., Michael Luzum, Legal Intern, Minneapolis, Minn., for U.S.

Before HEANEY and BEAM, Circuit Judges, and STUART *, Senior District Judge.

STUART, Senior District Judge.

This appeal arises from the defendants' alleged participation in an illegal drug transaction in Minnesota. All three defendants were convicted of aiding and abetting the knowing and intentional distribution of 14 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2, and of conspiracy to distribute and to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Defendant Rubiel Marin–Cifuentes (Marin) was also convicted of aiding and abetting the possession with intent to distribute of an additional 24 kilograms of cocaine and with importing 24 kilograms of cocaine into the United States in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B) and 18 U.S.C. § 2. Defendants Dairo Jesus Rios and Leonardo H. Quitian were convicted of travelling in interstate commerce from New York to Minnesota for the purpose of carrying on unlawful narcotics activity in violation of 18 U.S.C. § 1952(a). Seven other defendants were named in the indictment. Five plead guilty, and two are now fugitives. This appeal concerns only the claims of Marin, Rios, and Quitian.

Marin contends that the district court[1] erred in admitting "prior bad act" evidence and in admitting witness identification of his voice on audio cassettes and abused its discretion in sentencing him. Quitian appeals the district court's failure to sever his trial from trial of the others, and claims that his arrest and the search of his motel room were improper. Quitian and Rios both claim that the evidence presented at trial was insufficient for a jury to reasonably conclude beyond a reasonable doubt that they were guilty of the crimes charged. We affirm the District Court for the reasons that follow.

## I. PROBABLE CAUSE TO ARREST AND EXIGENT CIRCUMSTANCES TO ENTER MOTEL ROOM. (Quitian)

Quitian argues that his arrest was made without probable cause and that there were no exigent circumstances justifying the warrantless search of the Skywood motel room. Consequently, he asserts his post-arrest statement and any evidence seized from the motel room and/or car must be suppressed as "fruit of the poisonous tree."

A district court's finding of probable cause to make a warrantless arrest will not be overturned unless clearly erroneous. *United States v. Woolbright*, 831 F.2d 1390, 1393 (8th Cir.1987); *United States v. Wajda*, 810 F.2d 754, 758 (8th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). The existence of probable cause sufficient to justify a warrantless arrest depends on "whether, at the moment the arrest was made, the officers had probable cause to make it whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (citations omitted); *Woolbright*, 831 F.2d at 1393. The district court may consider the "collective knowledge and information of all of the officers involved." *Id.*

The facts underlying the decision to arrest Quitian are as follow. After his arrest in February of 1987, Thomas Mario Palis agreed to aid the Drug Enforcement Administration in accomplishing the arrest of his sources. Pursuant to this agreement,

---

* The Honorable William C. Stuart, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

he contacted Marin in Columbia. Marin agreed to sell cocaine to Palis and recruited Karen Bordonaro to transport it to Minneapolis. Bordonaro transacted her part of the distribution with the aid of John Jairo Ochoa–Crespo (Ochoa), whom she learned of through Marin, and Dairo Jesus Rios. Bordonaro arrived in Minneapolis on August 28 and Ochoa joined her on August 29. She then informed Palis that she could not complete the transaction until August 31.

On August 30 at 11 a.m. a call was placed from a portable phone rented by Ochoa to Dairo Rios' New York residence. Another call was placed to Rios' New York number at 11:21 p.m. Three minutes later a call was placed to the Skywood Motel in Fridley, Minnesota, where German Rios and Quitian were staying. Agents later learned that German Rios and Quitian had checked into the motel at 8:00 p.m. on August 30. The clear inference from these facts was that Ochoa was waiting for the cocaine to arrive in Minneapolis. He knew that the drivers were bringing it from New York. He did not know exactly where they were staying and he had to call Dairo Rios' residence in New York to find out where the drivers, German Rios and Leonardo Quitian, would be staying when they arrived in Minnesota.

On August 31 at approximately 9 a.m. Bordonaro told Palis that she needed a rental car, that the transaction would be completed in three separate trips, and that approximately fifteen kilograms of cocaine would be delivered. In Minneapolis, Dairo Rios rented a car and portable phone. Immediately thereafter, a call was placed from Ochoa's phone to the Skywood Motel. Shortly thereafter undercover agent Deputy Burchette and Palis delivered the keys of a red rental car to Bordonaro. She then stated that her people were out there and would be back in forty-five minutes with the cocaine. At 1:15 p.m., the officers observed Ochoa and Dairo Rios leaving the Marriott in two blue rental cars. Four minutes prior to their arrival at the Skywood, a telephone call was placed from Dairo Rios' telephone to the Skywood motel. Ochoa and Dairo Rios arrived at the Skywood at 2:15 p.m. At 2:20 p.m. they were observed coming out of the rear of the motel with Quitian. The three met at the back of a Chevrolet with New York license plates. They then stood near one of the rented cars. Quitian was then observed doing counter surveillance in the vicinity of the motel for the next hour.

Ochoa and Dairo Rios returned to the Marriott and transferred a black suitcase from the trunk of their car to the trunk of the red car rented for Bordonaro. Ochoa and Bordonaro then delivered the suitcase, which contained fourteen kilograms of cocaine, to Palis and Deputy Burchette. Burchette told Ochoa he would not be able to pay him until the cocaine was sold. Ochoa told him the money had to be sent back to New York with the same people who brought the cocaine.

Calls were exchanged between Ochoa's phone and a pay phone at a restaurant across from the Skywood early the next morning. The officers were still awaiting the arrival of an additional 24 kilograms of cocaine that Marin had promised to have delivered. Once Bordonaro advised Palis that the additional cocaine had arrived, Ochoa, Dairo Rios, Bordonaro, and two other defendants were arrested. Five minutes later officers entered room 154 of the Skywood Inn in Fridley, where they arrested Quitian.

The facts in the record as known to the officers on September 1 gave them cause to arrest Quitian at that time for drug dealing. This court must affirm the trial court's findings of probable cause and exigent circumstances to enter room 154 and arrest Quitian unless those findings are clearly erroneous. *United States v. Palumbo*, 735 F.2d 1095, 1096–97 (8th Cir.), *cert. denied*, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984); *United States v. Jones*, 635 F.2d 1357, 1360 (8th Cir.1980). The magistrate found that exigent circumstances were present here. The district court affirmed. The facts clearly show that this finding was correct.

The officers knew of the meeting between Quitian and Ochoa and Dairo Rios immediately before delivery of the cocaine.

They believed that the New York car where the meeting occurred was the load vehicle and that its drivers were waiting for the $936,000. They knew of frequent telephone communications between Ochoa and Dairo Rios and the occupants of Room 154 by means of portable telephones, hotel telephones, and pay telephones. The officers knew that Quitian especially was very surveillance conscious. Ochoa and Dairo Rios had been arrested. It would have been foolhardy to not make the arrest of Quitian at the same time to avoid the destruction of evidence or risk the chance of flight. Quitian's contention that the fears of destruction of evidence were only speculative is therefore wrong.

These facts are similar to those in *United States v. Palumbo*, 735 F.2d 1095 (8th Cir.), *cert. denied*, 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984), in which the court held that there were exigent circumstances to enter a hotel room when the arrest of a single defendant outside of the room would have alerted a second defendant who was in the room with the evidence. *Id.* at 1097. *Accord, United States v. Knobeloch*, 746 F.2d 1366, 1367 (8th Cir.1984), *cert. denied.* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383. *See also, United States v. Kulcsar*, 586 F.2d 1283, 1287 (8th Cir.1978) (when narcotics source observed police officers outside his house after arrest of codefendant who could not return with money, exigent circumstances existed); and *United States v. Wentz*, 686 F.2d 653, 657 (8th Cir.1982) (exigent circumstances existed upon arrest of codefendant and his failure to return to source with money).

We therefore find that there was probable cause to arrest Quitian and that exigent circumstances justified the warrantless entry of room 154.

## II.   SUFFICIENCY OF THE EVIDENCE.   (Quitian and Dairo Rios)

Defendants Dairo Rios and Quitian contend that the evidence was insufficient to support their convictions and, therefore, that the district court erred in denying their motions for acquittal.

The defendants' convictions must be upheld if, viewing the evidence in the light most favorable to the government, there is substantial evidence to support the jury's verdict. *United States v. Coronel Quintana*, 752 F.2d 1284, 1292 (8th Cir.) *cert. denied* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed. 2d 54 (1985); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 700 (1942); *United States v. Hudson*, 717 F.2d 1211, 1213 (8th Cir.1983). In reviewing the jury's verdict, we give the government the benefit of all inferences that may reasonably be drawn from the evidence. *Hudson*, 717 F.2d at 1213; *United States v. Richmond*, 700 F.2d 1183, 1189 (8th Cir. 1983); *United States v. Cox*, 580 F.2d 317, 323 (8th Cir.1978), *cert. denied*, 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979). Moreover, it is unnecessary that the evidence exclude every reasonable hypotheses except guilt; rather, the evidence must simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty. *United States v. Bentley*, 706 F.2d 1498, 1508 (8th Cir.1983), *cert. denied*, 467 U.S. 1209, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984); *United States v. Richmond*, 700 F.2d at 1189; *United States v. Archambault*, 670 F.2d 800, 801 (8th Cir. 1982). Finally, the essential elements of the charge may be proven by circumstantial, as well as direct evidence. *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150, 160 (1954); *Hudson*, 717 F.2d at 1213; *Richmond*, 700 F.2d at 1189. Viewing the evidence under these standards, we believe that the district court did not err in denying the defendants' motions for judgment of acquittal.

■   The evidence and its reasonable inferences showed that Dairo Rios and Ochoa were partners in the cocaine trade who arranged for delivery of the 14 kilos to Minnesota in the car driven by Quitian and German Rios from New York. When Dairo Rios and Ochoa arrived in Minnesota by air, they rented the two cars and two telephones.

They told Bordonaro they were going to get the cocaine. They drove directly to the Skywood in Fridley and met only with Quitian near the New York car. Although Quitian asserts that it was German Rios who met with Ochoa and Dairo Rios, the identifying officer was cross-examined on this issue and the jury could have believed it had been Quitian. The officers were conducting a roving surveillance, so they did not see the actual transfer of the cocaine between cars at the Skywood. Ochoa then told Bordonaro by telephone that they had the cocaine. Dairo Rios and Ochoa came immediately back to Bloomington with the cocaine, which was promptly delivered to the undercover officer. Ochoa made statements indicating that the money would be returned to New York in the same car.

Further evidence indicating Quitian's involvement was found in the motel room he shared with German Rios, including the empty bindle, the razor blades, and the Hertz map marked with the location of Ochoa's hotel, and a piece of plastic matching the plastic in which the 14 kilograms was wrapped was found in a bag containing Quitian's wallet.

Quitian's home telephone bill showed calls from New York to Colombia during the critical days of August 22, 23 and 25, when Marin was in Colombia putting the deal together. The telephone tolls from Ochoa's hotel room showed no local calls except to Quitian's motel. The portable telephone records showed no local calls on August 31 except to Ochoa's hotel and to Quitian's motel.

Quitian relies upon the mere presence cases of *United States v. Clemons,* 503 F.2d 486 (8th Cir.1974); *United States v. Frol,* 518 F.2d 1134 (8th Cir.1975); and *United States v. Robinson,* 782 F.2d 128 (8th Cir.1986) to support his contention that the evidence is insufficient to support his conviction. None of these cases involved, as here, incriminating evidence such as a large amount of cocaine involving of necessity a large number of conspirators, nor an exclusive meeting such as that between Quitian and the procurers of cocaine at the exact time when the procurers had gone to get it, nor extensive countersurveillance, as performed by Quitian, nor telephone calls to Colombia during another critical time of the conspiracy, as were made from Quitian's home.

■ Dairo Rios raises two contentions. He contends that no evidence was presented at trial that he had participated in a transaction either by transporting, carrying, or possessing the black bag containing cocaine, or in any other manner. The cases in this circuit have clearly held that neither possession nor an actual sale by a defendant need be proved by the government on a charge of distributing or aiding and abetting the distribution of drugs. *See United States v. Nelson,* 563 F.2d 928, 928–931 (8th Cir.1977); *United States v. Collins,* 552 F.2d 243, 245–46 (8th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); and *United States v. Pruitt,* 487 F.2d 1241, 1245 (8th Cir.1973).

■ Dairo Rios also contends that the only direct evidence connecting him with cocaine was the testimony of Karen Bordonaro concerning an August 26, 1987, meeting in New York City at which he displayed a kilogram of cocaine. He points out that he took the stand and denied that the meeting ever occurred. The jury was entitled to credit Bordonaro rather than the defendant. When questions concerning a defendant's intent in a narcotics case turn on the credibility and demeanor of witnesses, it is peculiarly the province of the fact finder. *United States v. Reeves,* 730 F.2d 1189, 1195 (8th Cir.1984). The evidence recited above, together with the fact that Dairo Rios drove the rental car from the Skywood to the Marriott when it had the 14 kilos in its trunk were sufficient to convict him.

Viewing the evidence in the light most favorable to the government, there was substantial evidence to support the convictions of both Rios and Quitian.

### III. SEVERANCE (Quitian)

Quitian contends that the trial court's refusal to sever his trial from the others

denied him a fair trial and limited his ability to cross examine the government's witnesses and corroborate his statement and proof. The government claims that Quitian did not adequately preserve his motion for severance because he did not renew it after Dairo Rios' exculpatory testimony nor at the conclusion of all the evidence, and in any event, argues that denial of severance did not clearly prejudice Quitian.

■ This circuit has stated that "failure to renew [a] motion for severance at the end of the government's case or at the conclusion of all the evidence, constitutes a waiver of [a] demand for separate trials." *United States v. Shearer*, 606 F.2d 819, 821 (8th Cir.1979). *See also United States v. Luschen*, 614 F.2d 1164 (8th Cir.), *cert. denied*, 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980). Recently, this court modified that rule in *United States v. Thornberg*, 844 F.2d 573 (8th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988). In deciding whether a motion for severance is properly preserved the court must look to the principal reasons for requiring the preservation of objection (1) to indicate whether the appealing party consented to the error, and (2) to give the trial court the opportunity to rule on the matter in its concrete form. Applying those principles to the present case, we find that Quitian has failed to properly preserve his motion for severance.

Quitian states in his brief that he last moved for severance just after German Rios fled the district. Subsequently, Dairo Rios' testimony exculpated Quitian by implicating German Rios, not Quitian, as the person present in the Skywood parking lot with Dairo Jesus Rios and John Jairo Ochoa–Crespo prior to the delivery of cocaine to the Marriott Hotel in Bloomington, Minnesota. Had German Rios not fled, Dairo Rios may not have taken the stand to implicate him. But Quitian did not move for severance after Dairo Rios testified. Soon after, all parties rested. Quitian acquiesced in the court's decision to try all defendants together by not moving for severance after Dairo Rios' testimony, which was very favorable to him. By failing to

renew his motion to sever after favorable testimony, Quitian did not preserve the severance issue. We cannot be sure that he did not consent to the joint trial. *Thornberg, id.* at 576. It may very well be that having enjoyed the benefits of a trial at which German Rios remained a defendant, albeit an absent one who had implied his own guilt and implied Quitian's innocence by flight, Quitian seeks to second guess his own tactical decision.

■ In any event, denial of Quitian's motion for severance was not error. "The general rule is that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Lee*, 743 F.2d 1240, 1248 (8th Cir.1984). *See also United States v. Krevsky*, 741 F.2d 1090, 1094 (8th Cir.1984); *United States v. Miller*, 725 F.2d 462, 467 (8th Cir.1984). "A defendant must show more than that his chances for acquittal would have been better had he been tried separately." *Lee*, 743 F.2d at 1248. Rather, the defendant must show that he was prejudiced by the denial for severance, and this prejudice must be "clear" and "real." *Miller*, 725 F.2d at 467.

Quitian claims that he was prejudiced by the failure to sever because as a result of the confusing and contradictory identification evidence between he and German Rios, it was difficult to compartmentalize the evidence against Mr. Quitian as against Mr. Rios. Secondly he argues that he was prejudiced by the joint trial because the post-arrest statements of German Rios and Nellie Rios which provide corroboration to Mr. Quitian's post-arrest statement that he was just in Minnesota on vacation were not allowed by the trial court to be presented to the jury.

It is not clear that severance would have cleared up any confusion as between German Rios and Quitian. Additionally, we do not agree that German Rios' post-arrest statement would have been admissible in a trial where Rios was not a defendant or that the statement clearly exculpates Quitian. German Rios stated that he had met

with Ochoa and Dairo Rios to open a video store. The court suppressed German Rios' statement because he had not waived his constitutional rights prior to making the statement. With a separate trial, Quitian claims that he would have been allowed to introduce the statement under Federal Rule of Evidence 804(b)(3) as a statement against interest.

The statement is not a statement against interest. Rios' statement is not "so far contrary to [his] pecuniary or proprietary interest * * * that a reasonable person in his position would not have made the statement unless [he believed] it to be true." Fed.R.Evid. 804(b)(3). German Rios's statement constituted an alibi for his presence in Fridley, Minnesota, but would not subject him to criminal liability. He in fact denied knowledge of any cocaine dealings. It is quite clear that a reasonable person in German Rios's position might well have made these statements without believing them to be true. *United States v. Tovar*, 687 F.2d 1210, 1213 (8th Cir.1982).

If Quitian were to offer the statement under another theory to solve the hearsay problem, it still would not be enough to overrule the trial court's denial of Quitian's motion to sever. "[T]here must be some appreciable chance that [the defendant] would not have been convicted had the separate trial [he] wanted been granted." *United States v. Bostic*, 713 F.2d 401, 403 (8th Cir.1983). Quitian's whole purpose in offering this statement was to show that German Rios, not he, met with Ochoa and Dairo Rios in the parking lot at the Skywood on August 31. He accomplished this through other means. Dairo Rios testified to exactly that. Admission of the statements of German and Nellie Rios, to whose statements the same analysis applies, would have added little to the defense.

Therefore, we conclude that the district did not abuse its discretion in denying Quitian's motion for severance.

## IV. WITNESS IDENTIFICATION OF MARIN'S VOICE ON AUDIO CASSETTE TAPES.

In this case, the government made tape recordings of incriminating telephone conversations between certain individuals involved in this incident. There was identification by four people that one of the individuals speaking on the tapes was defendant Marin. Marin claims these identifications were inadequate and therefore inadmissible because the witnesses did not have a sufficient opportunity to become acquainted with his voice prior to identification.

■ Any person may identify a speaker's voice if he has heard the voice at any time. *United States v. Cerone*, 830 F.2d 938, 949 (8th Cir.1987). Minimal familiarity is sufficient for admissibility purposes. *Id.* The four witnesses who identified Marin's voice were Detective Eldon Fontana, Sergeant John Boulger, Karen Bordonaro, and Thomas Marin Palis.

■ Detective Fontana spoke to Marin twice after his arrest, once very briefly and once for five minutes, and heard Marin's voice each time. Sergeant John Boulger arrested Marin in Miami while Marin was speaking on the telephone to the informant in Minneapolis. Sergeant Boulger then interviewed Marin for one-half hour. Boulger, who sat through the entire trial and heard all of the tapes, identified the voice of "Rubio" on the tapes as that of Marin.

After her arrest, Karen Bordonaro, a co-defendant, placed two calls to Colombia relating to drug transactions. She identified the recipient's voice as that of Marin. She was familiar with Marin's voice because she had met with him during numerous drug deals in the year before their arrests. Thomas Mario Palis, the government's informant, placed most of the calls to Marin in Colombia and in Florida. The informant was familiar with Marin's voice, having conducted cocaine deals with him during 1985 and 1986 in the New York area.

Attacks on the accuracy of the identification go to the weight of the evidence, and the issue is for the jury to decide. *Cerone*, 830 F.2d at 949. Accordingly, we find no error in the district court's admission into

evidence of the identification of Marin's voice.

## V. PRIOR BAD ACT EVIDENCE. (Marin)

Marin argues that the district court erred in allowing into evidence testimony that he had been involved in drug transactions with Thomas Mario Palis and Karen Bordonaro for a period of time prior to the occurrence of the transactions at issue here. Evidence that Marin distributed drugs in the past is evidence of prior bad acts and is not admissible to prove that because Marin was involved in illegal activity in the past, he is guilty of the current charges. *See* Fed.R. Evid. 404(b) and *United States v. Lanier,* 838 F.2d 281, 285 (8th Cir.1988) (per curiam). The government contends that the evidence is admissible, however, to prove identity, intent, knowledge or as *res gestae* evidence. *See* Fed.R.Evid. 404(b).

▮ Evidence of prior bad acts is admissible when it is relevant to an issue in question other than the character of the defendant, there is sufficient evidence to support a finding by the jury that the defendant committed the prior act, and the potential unfair prejudice does not substantially outweigh the probative value of the evidence. *Huddleston v. United States,* — U.S. ——, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). This circuit views Rule 404(b) as a rule generally of inclusion, and a trial court's broad discretion in admitting wrongful act evidence will not be disturbed unless the defendant can show that the proof in question "clearly had no bearing upon any of the issues involved." *United States v. Estabrook,* 774 F.2d 284, 287 (8th Cir.1985).

▮ Here, knowledge, intent and identity were material issues both because these are essential elements of the crime and because the defense was a general denial. *See United States v. Burkett,* 821 F.2d 1306, 1309 (8th Cir.1987) and *United States v. Gilmore,* 730 F.2d 550, 554 (8th Cir. 1984). Additionally, identity became a contested issue when defense counsel cross-examined the witnesses identifications of Marin's voice. The government certainly was

entitled to use evidence of prior dealings with Marin to lay a foundation for such identification and to show the course of conduct leading to the events which form the basis of the crime charged and is admissible on these grounds. *United States v. Robbins,* 613 F.2d 688, 694 (8th Cir.1979). The proffered evidence was relevant to the issues and related to wrongdoing similar in kind. *See United States v. Weber,* 818 F.2d 14, 15 (8th Cir.1987).

There is sufficient evidence to support a finding by the jury that the defendant committed the similar act and the potential for unfair prejudice does not clearly outweigh the probative weight of the evidence. The court gave an instruction properly limiting the use of such evidence. We therefore affirm the district court's admission of the prior bad act evidence.

## VI. MARIN'S SENTENCE

Marin was convicted on two counts of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), importation of cocaine in violation of 21 U.S.C. §§ 952(a) and 960(b)(1)(B), and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. He was sentenced to a term of imprisonment of sixty (60) years and received a four million dollar ($4,000,000.00) fine. There is no contention that the sentence imposed was outside the statutory maximum. Marin contends, however, that the district court relied on inaccurate and unreliable information and abused its discretion in imposing the sentence.

▮ A sentence is generally not subject to review unless it exceeds statutory limits, violates constitutional or procedural requirements, or reflects that the district court failed to exercise its discretion or manifestly or grossly abused its discretion. *United States v. Rosandich,* 729 F.2d 1512 (8th Cir.1984). In sentencing Marin, Judge Rosenbaum relied upon only the evidence adduced at trial. Marin contends that the testimony of Karen Bordonaro and Athanasios Parlionas was unreliable and therefore that the court should not have relied

upon it in imposing sentence. The district court has wide discretion in sentencing and its inquiry is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972). The defendant had an opportunity to cross-examine Bordonaro and Parlionas to expose and rebut any weaknesses in their testimony. The district court did not err in considering their testimony.

The appellant claims that abuse of discretion is shown by the fact that his sentence is more than double that which would have been imposed had the Federal Sentencing Guidelines been applicable. The guidelines are not applicable to this case. The sentence is within the statutory limits. Marin was centrally involved in the importation of a large amount of cocaine into the United States and the delivery of 38 kilograms of cocaine to the Twin Cities. The district court did not abuse its discretion in sentencing Marin to a lengthy sentence and a substantial fine.

We therefore affirm.