**UNITED STATES of America, Appellee,**

v.

**Patti Ann MEYER, Appellant.**

**No. 90–5085MN.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1990.

Decided June 26, 1990.

Paul Engh, Minneapolis, Minn., for appellant.

Jeanne J. Graham, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, MAGILL, and BEAM, Circuit Judges.

**PER CURIAM.**

Patti Ann Meyer appeals her conviction of making, and aiding and abetting the making of false statements in a passport application, in violation of 18 U.S.C. §§ 1542 and 2. Meyer argues that the government's delay of over three years between the date of her offense and trial violated her sixth amendment right to a speedy trial, her fifth amendment right to due process and the Speedy Trial Act, 18 U.S.C. § 3161, *et. seq.* She further argues that the government's proof at trial was insufficient as a matter of law to prove her guilt beyond a reasonable doubt. The district court [1] rejected these arguments. We affirm.

## I.

On September 6, 1985, Wilson George Simon (Simon), Meyer's boyfriend, applied for a United States passport in the name of his deceased brother, Sayed George Simon (Sayed Simon). Because Simon did not have the necessary identification to prove he was Sayed Simon, he submitted an affidavit in Meyer's name vouching for his identity. Despite her protestations to the contrary, through its verdict the jury found that Meyer personally signed the affidavit.

Over one year before this incident, Simon was tried and convicted in federal district court of possession with intent to distribute hashish and hashish oil, in violation of 21 U.S.C. § 841(a)(1), and of being a convicted felon in possession of two firearms, in violation of 18 U.S.C. § 922. Meyer attended the entire trial and, along with others, picketed outside the courthouse carrying signs declaring Simon's innocence.

During the pendency of Simon's appeal to this court, he remained free on bond. On August 15, 1985, Simon, Meyer and two others applied for passports. Simon listed his home address as 1811 Como Avenue S.E., Minneapolis, his travel plans as Europe and his date of departure as August 25, 1985. Meyer listed the same informa-

tion on her application. In addition, Simon's daughter and Takashi David Yoshino each completed a passport application, listing August 25, 1985 as their departure date and Europe as their destination.

Because neither Simon's daughter nor Yoshino had sufficient forms of identification, Simon signed an affidavit of identifying witness vouching for his daughter's identity and Meyer signed an affidavit vouching for Yoshino's identity. Upon submitting the form, Meyer presented her driver's license to Roger Walstead, a postal employee who processes passport applications. Walstead testified that on the affidavit he copied Meyer's license number and its expiration date. Her driver's license number was listed as beginning with an "M" followed by twelve digits, the last three of which were "829". The expiration date of her license was noted as October 27, 1988.

On August 19, 1985, over one month after we upheld his conviction, *United States v. Simon*, 767 F.2d 420 (8th Cir.), *cert. denied*, 474 U.S. 863, 106 S.Ct. 179, 88 L.Ed.2d 148 (1985), Simon was given notice to voluntarily surrender to United States Marshals on September 10, 1985. However, Simon had other plans. On September 6, 1985, Simon and a female companion went to the post office. Simon applied for another passport in his deceased brother's name. Simon listed his address as 1019 Main Street N.E., Minneapolis, a departure date of September 20, 1985, and destination as Europe. An affidavit in Meyer's name vouching for Simon's identity was submitted with the passport application. The affiant stated that she had known "Sayed Simon" for five years.[2] The affiant also listed the same address Meyer had provided in her August 15, 1985 affidavit, vouching for Yoshino's identity.

Alan Rodeberg, a postal employee, processed the applications. He testified that the affidavit was completed and signed in his presence. Although he testified he could not identify the affiant, he did recall

---

**1.** The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

**2.** Sayed Simon died in 1954 from burns suffered as a result of a car accident.

that she was younger than Simon. Meyer is approximately eighteen years younger than Simon. Rodeberg further testified that the affiant produced a driver's license, whose number and expiration date he copied onto the affidavit. Although Rodeberg noted the expiration date as October 27, 1958,[3] he testified that he had mistakenly copied the date of birth from the license. October 27, 1958 is in fact Meyer's date of birth. The driver's license number he wrote down began with an "N" and was followed by twelve digits, the last three of which were "828".[4]

On September 6, 1985, Simon and his younger female companion also went to an American Automobile Association (AAA) office to purchase six photographs for an international driving permit and passport. He also applied for international driving permits under his and Meyer's names. After being shown Meyer's international driving permit photograph, the AAA representative stated that it appeared to be a picture of the woman who was with Simon.

Simon failed to voluntarily turn himself in to the marshals on September 10, 1985 as ordered. Local authorities received information that Simon was in an apartment in Fridley, Minnesota. A search warrant was then obtained. Later that day, when officers entered the apartment, they found Simon, Meyer and the apartment's resident. The police seized a large number of documents, including two letters, one from the Seattle Passport Agency addressed to Sayed Simon, dated September 10, 1985, and one written to the Seattle Passport Agency purporting to be from Sayed Simon, dated September 15, 1985; microfilm copies of school records for Sayed Simon from 1953; an application for a Minnesota driver's license; international driving permits in the names of Meyer and Simon, issued on September 17, 1985; and passports issued to Simon on August 19, 1985 and to Meyer on August 16, 1985.

On April 9, 1986, Meyer was indicted on one count of making, and aiding and abetting the making of false statements in a passport application on September 6, 1985.[5] On May 21, 1986, pursuant to the government's request, the district court dismissed the indictment without prejudice to permit additional investigation to confirm the passport affiant's identity. After the dismissal, the government obtained from Meyer handwriting exemplars and signatures made in the ordinary course of business. These signatures were analyzed by an expert and compared with the passport document at issue in this case. The expert testified that she was certain the signature on the document was Meyer's and not a forgery.

On April 18, 1989, the grand jury returned another indictment charging Meyer with the same offense. After making her initial appearance on July 17, 1989, she was released on a $5,000 unsecured bond. Trial was originally scheduled for September 11, 1989, but did not commence until the following month. On August 31, 1989, Meyer filed a pro se motion for continuance charging her counsel with ineffective assistance, collusion with the government, and otherwise unethical behavior. Counsel subsequently filed a motion to withdraw. The court appointed new counsel on September 11, 1989, and granted Meyer's motion for a continuance, setting a new trial date of October 10, 1989. On several occasions before trial, Meyer unsuccessfully moved to dismiss the indictment on speedy trial grounds. On October 12, 1989, the jury returned a verdict finding Meyer guilty. She filed a motion for judgment of acquittal, arguing that the evidence was insufficient to support the verdict. In the alternative, she sought a new trial arguing that her due process and speedy trial rights had been violated. On October 31, 1989, the district court denied both motions.

---

**3.** This is the same month and day noted on Meyer's August 15, 1985 affidavit. However, the year is different.

**4.** This number is identical to the number written down on the August 15, 1985 application

except for the first letter and last number. The remaining eleven digits were identical.

**5.** Meyer was initially charged by complaint on March 28, 1986.

## II.

### A.

 Meyer first argues that the nature of the government's prosecution violated her sixth amendment right to a speedy trial. Meyer's sixth amendment claim is based on the three-year delay between the date of the offense and the date of the trial. Her claim is without merit because it ignores the intervening dismissal of the first indictment. The original indictment was dismissed without prejudice only two months after it was returned. She was not reindicted until nearly three years later. This three-year period between the dismissal of that indictment and Meyer's reindictment for the same offense does not implicate her sixth amendment right to a speedy trial because that guaranty is not operative after charges have been formally dismissed. *See United States v. Mac-Donald*, 456 U.S. 1, 9–10, 102 S.Ct. 1497, 1502–03, 71 L.Ed.2d 696 (1982) (no speedy trial violation when defendant indicted on civilian charges four years after dismissal of military charge for same crime); *United States v. Wallace*, 848 F.2d 1464, 1469 (9th Cir.1988) (period between dismissal of original indictment and reindictment reviewed by due process preaccusation standard because speedy trial right inapposite). Such a delay implicates only the due process clause. *Id.; see infra* at 1251–52. Therefore, we reject Meyer's speedy trial claim.

 If Meyer is to successfully allege a violation of her sixth amendment right to a speedy trial, she must focus on either the approximate two-month period from her arrest to the dismissal of the first indictment or on the approximate three-month period from her first appearance on the second indictment to her trial. Because, however, Meyer does not argue that either delay violated her constitutional right to a speedy trial, we need not reach that issue. Nevertheless, we do note, and Meyer concedes, that the government's delay did not violate

the terms of the Speedy Trial Act.[6] It is "an unusual case" in which the sixth amendment has been violated when the Act's time limits have been met. *United States v. Thirion*, 813 F.2d 146, 154 (8th Cir.1987).

### B.

 Meyer next argues that the delay of over three years in bringing her to trial violated her right to due process because the government was able to obtain an unfair tactical advantage. Although statutes of limitations are the primary safeguard against prejudicial preaccusation delay, Meyer may establish a due process violation based upon preaccusation delay by showing that it resulted in actual prejudice and was intentional and improperly motivated. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). To meet her heavy burden of establishing actual prejudice, she must prove that the preaccusation delay substantially prejudiced her defense. *United States v. Scott*, 795 F.2d 1245, 1249–50 (5th Cir.1986) (mere passage of time plus unsubstantiated assertions of memory failure and loss of witness insufficient to establish prejudice). Furthermore, Meyer must demonstrate that the government intentionally delayed either to gain a tactical advantage or to harass her. *United States v. Lovasco*, 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977); *United States v. Carlson*, 697 F.2d 231, 236 (8th Cir.1983).

 Although we would normally first inquire into whether Meyer was actually prejudiced by the delay, we need not do so in this case because Meyer does not even allege, nor does the evidence even come close to demonstrating, that the government intentionally delayed with the purpose of harassing her or gaining a tactical advantage. The government dismissed the first indictment in order to permit additional investigation into the offender's identity. Merely because the police did not come up with substantial additional information

---

**6.** Meyer's claim that the government violated the spirit of the Speedy Trial Act will be briefly discussed later. *See infra* at 1252.

does not demonstrate that the police intentionally delayed for an improper purpose. We therefore reject Meyer's due process challenge. *See Lovasco*, 431 U.S. at 789–90, 97 S.Ct. at 2048–49 (no due process violation when defendant alleged prejudice because government properly delayed prosecution to discover identities of other participants in theft, not for tactical advantage); *Marion*, 404 U.S. at 324–25, 92 S.Ct. at 465–66 (1971) (no due process violation when defendant failed to prove delay intended to gain tactical advantage or harass defendant); *United States v. Sebetich*, 776 F.2d 412, 430 (3d Cir.1985) (no due process violation although government had enough information for indictment two years before defendant indicted when delay due to confusion between state and federal authorities), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 725, 98 L.Ed.2d 673 (1988).

### C.

 Meyer further argues that the district court abused its discretion when it denied her motion to dismiss the indictment based upon a violation of the Speedy Trial Act. The Act requires, *inter alia*, that a defendant's trial commence within seventy days from the filing of the indictment, or from the date the defendant has first appeared before a judicial officer, whichever is later, subject to enumerated periods of excludable delays including a defendant's request for a continuance. Meyer prudently concedes that the government, in pursuing her prosecution, did not violate the terms of the Act. Instead, she argues the government violated the spirit of the Act. We reject her argument as completely without merit. *United States v. Leone*, 823 F.2d 246, 248–49 (8th Cir.1987).

### III.

 Finally, Meyer argues that the government's proof at trial was insufficient as a matter of law to establish her guilt beyond a reasonable doubt. We must affirm her conviction if, viewing the evidence in the light most favorable to the govern-

ment, there is substantial evidence to support the jury's verdict. *United States v. Marin–Cifuentes*, 866 F.2d 988, 992 (8th Cir.1989). In making this determination, we must give the government the benefit of all inferences that may reasonably be drawn from the evidence. *Id.* The evidence need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the trier of fact beyond a reasonable doubt that the defendant is guilty. *Id.* We will not lightly overturn the jury's finding of guilt. *United States v. Knife*, 592 F.2d 472, 475 (8th Cir.1979).

 This is not even a close case. The evidence in support of Meyer's conviction was overwhelming. She was Simon's live-in girlfriend. She knew about his upcoming incarceration because she had attended his entire trial in 1984. On August 15, 1985, she and Simon applied for passports together for a trip to Europe. They planned to depart shortly before Simon was scheduled to turn himself in to the marshals. On that date, she completed an affidavit vouching for Yoshino's identity. A few weeks later, Simon went to the passport office, accompanied by a woman younger than himself. Meyer is eighteen years younger than Simon. A handwriting expert testified that in her opinion the signature on the fraudulent affidavit was definitely Meyer's.[7] Furthermore, the birth date written on the affidavit was the same as Meyer's, and the driver's license number was identical with the exception of the first letter and last digit. Finally, after completing the passport application and corresponding affidavit at the post office, Simon, accompanied by the younger woman, went to an AAA office and applied for two international driving permits in both his and Meyer's names. The AAA representative identified the woman in Meyer's international driving permit photograph as the woman who was with Simon on that date. There was substantial evidence upon which the jury could reasonably have convicted Meyer.

---

**7.** Meyer attempts to impugn the credibility of the handwriting witness on appeal. The jury presumably heard this attack but nonetheless found the witness to be credible.

## IV.

As a preliminary matter, we wish to extend our thanks to Meyer's court-appointed counsel for his exemplary representation of his client on appeal.[8] Despite counsel's outstanding efforts, however, we conclude that Meyer has not stated a violation of the Speedy Trial Act, her sixth amendment right to a speedy trial, or her fifth amendment right to due process. Furthermore, the evidence introduced at trial was sufficient as a matter of law to sustain her conviction. Accordingly, we affirm.

---

**8.** We further note that we have carefully and thoroughly considered the arguments made in Meyer's pro se brief and find them to be without merit.