**UNITED STATES of America, Appellee,**

v.

**James BURKS, Appellant.**

**No. 90–1310.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 28, 1990.

Decided May 14, 1991.

Rehearing Denied June 11, 1991.

Law Offices of Susan G. James and Jeffery C. Duffy, A.S. Agricola, Jr., Montgomery, Ala., for appellant.

William M. Cromwell, Fort Smith, Ark., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and CAHILL,* District Judge.

CAHILL, District Judge.

James Burks appeals his conviction from the District Court[1] for one count of attempting to deliver amphetamines, a violation of 21 U.S.C. § 841. Burks raises three issues on appeal. First, he contends that

---

\* The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

the trial court erred in overruling defendant's motion for an acquittal when the evidence failed to show that appellant possessed amphetamine. Second, Burks contends the trial court erred in admitting evidence of prior conduct of defendant. Third, Burks contends that the trial court erred in its calculation of the offense category by finding: (a) that the defendant intended to manufacture seven pounds of amphetamine, and (b) that the defendant possessed a firearm during the commission of the offense. We affirm in part and reverse in part.

## I.  Facts.

During the year 1988, James Burks was identified and subsequently became the subject of an investigation by the Arkansas State Police as an individual involved in the manufacture and distribution of amphetamines. In November of 1988, Arkansas State Police Criminal Investigator Steve Clemmons, while working undercover, held a conversation with James Burks. During this conversation Burks offered to sell Clemmons an amphetamine lab for $50,000. Burks stated that this lab was capable of producing seven or eight pounds of amphetamine. Subsequently, no transaction concerning this lab ever occurred nor did the undercover officer ever see the actual lab in question. In December of 1988, Drug Enforcement Administration officials received information that Burks and another individual had transported a 110 pound barrel of phenylacetic acid[2] from New Jersey back to Ashdown, Arkansas, where Burks currently resided.

On January 10, 1989, a confidential informant approached Burks wanting to purchase six ounces of amphetamine in exchange for $6,000. The state police recorded the conversation. The following day the informant was given $6,000 in marked government funds and was also again equipped with a recording device. At their meeting Burks related to the informant that the procedure for the transaction

would be for Burks to take the money to the supplier of the amphetamine. Later that day this supplier would notify Burks of the location of the amphetamines for pick-up. Of the $6,000 buy money, $900 was given to the informant as his "cut" for arranging the transaction.

After this meeting, Burks and his wife left their house in Burks' truck and headed for the interstate in the direction of the Oklahoma state line. Police then stopped Burks on this highway and placed him under arrest for the attempted delivery of a controlled substance. Burks was searched upon arrest and $5,100 in government buy money was recovered from Burks' rear pants pocket. While in custody, and pursuant to a search warrant on Burks' home, police did seize a 9 mm. semi-automatic pistol with three loaded 30 round magazines.

At trial Burks contended that he never intended to deliver any controlled substances to the informant. Burks argued that he was simply attempting to recover a portion of loans he had previously made to the informant. After a trial of the case, the jury found the defendant guilty as charged in the one-count indictment.

At sentencing, the court found that the amount of controlled substance involved was seven pounds rather than six ounces, and also found that Burks possessed the 9 mm. pistol at the time of the offense. The defendant was sentenced to 104 months, a $15,000 fine, and five years of supervised release.

## II.  Admission of Other Evidence of Other Offenses.

■ Appellant's first contention on appeal is that the district court should not have admitted evidence of prior conduct of the appellant that tended to show (1) that the defendant assisted another person in bringing 100 pounds of phenylacetic acid from New Jersey to Arkansas; and (2) that the defendant offered to sell an amphetamine laboratory to an undercover agent

2. Phenylacetic acid is a necessary primary chemical used in the production of amphetamines.

approximately two months prior to the alleged offense. The trial court is given great latitude in ruling on the admissibility of prior bad acts and will not be overturned as long as (1) the evidence is relevant to an issue in question; (2) a jury could reasonably find, by a preponderance of the evidence, that the defendant committed the prior acts; and (3) its probative value is not outweighed by potential unfair prejudice. *See Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 1501–02, 99 L.Ed.2d 771 (1988); *United States v. Schleicher*, 862 F.2d 1320, 1322–23 (8th Cir. 1988), *cert. denied*, 489 U.S. 1058, 109 S.Ct. 1326, 103 L.Ed.2d 594 (1989).

█ The evidence linking Burks to the phenylacetic acid purchase was adduced on cross-examination after Burks denied any involvement with narcotics. Additionally, rebuttal testimony by the Government's chemist revealed that phenylacetic acid is a precursor to amphetamines and is on the Drug Enforcement Administration watch list. Burks' denial of any involvement with amphetamines or narcotics reinforces the admissibility of the evidence in order to establish intent and knowledge to commit the crime charged. *See United States v. Lewis*, 759 F.2d 1316, 1349 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985).

█ Burks' further denial of any association with the undercover officer could properly be rebutted by testimony of the officer as to the proposed sale of the laboratory. *See United States v. Felix*, 867 F.2d 1068 (8th Cir.1989). We fail to see any error on the part of the trial court in the admission of any of this evidence.

### III. Sufficiency of the Evidence.

█ Burks contends that the evidence is insufficient to prove the attempted delivery of a controlled substance when there is no evidence that he possessed a controlled substance on the occasion in question.

█ The defendant's conviction will be upheld if, after viewing the evidence in a light most favorable to the Government, there is substantial evidence to support the jury's verdict. *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Marin–Cifuentes*, 866 F.2d 988, 992 (8th Cir.1989). The Government must be given the benefit of all reasonable inferences that may be reasonably drawn from the evidence. *United States v. Marin–Cifuentes*, 866 F.2d at 992 (8th Cir.1989). If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction. *United States v. Holm*, 836 F.2d 1119, 1122 (8th Cir.1988). The standard of review of an appeal concerning sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly. *United States v. Knife*, 592 F.2d 472, 475 (8th Cir.1979).

The appellant had a history of distributing amphetamines to the Government's confidential informant. On the tape recorded conversation on the day in question, the appellant agreed to sell six ounces of amphetamines in return for $6,000. It was agreed that the sale was to take place the next day. The plan called for the appellant to obtain the drugs from his source and thereafter arrange for delivery. The next day the marked money was given to the appellant and, after a short time elapsed, Burks left his home and headed toward Oklahoma. Burks was then stopped by the officers who discovered the buy money in Burks' pants pocket. At the time the appellant was stopped, he was driving his pick-up truck which had a bag of trash in the back. The Government informant testified that he had been acquainted with the appellant for about five years, they were friends and the informant had helped the appellant deal drugs almost every day for about two years. Furthermore, he testified that Burks' method of transporting amphetamine was to bring it from Oklahoma to Arkansas concealed in some trash in the back of his truck.

The appellant denies, however, that he was involved with the informant as it related to trafficking or distributing narcotics. Furthermore, he argues that this informant owed the appellant large sums of money

and this was simply a way to try and recoup part of the money loaned.

■ To constitute an attempted crime, an individual must be found to (1) have an intent to engage in criminal conduct, and (2) engage in conduct constituting a "substantial step" toward the commission of the substantive offense which strongly corroborates the actor's criminal intent. *United States v. Joyce*, 693 F.2d 838, 841 (8th Cir.1982). Such intent may be shown by circumstantial evidence. *United States v. Rodriguez*, 812 F.2d 414, 416 (8th Cir.1987).

Having examined the trial transcript and the testimony adduced at trial, we believe that there was sufficient evidence to enable a jury of reasonable men and women to return a verdict of guilty beyond a reasonable doubt. The Court, therefore, will not disturb the verdict and will affirm the appellant's conviction.

### IV. Calculation of Offense Level.

■ Burks' final contention on appeal addresses the trial court's calculation of the offense category in that it found (A) the appellant intended to manufacture seven pounds of amphetamine, and (B) the appellant possessed a firearm during the commission of the offense. We agree the applicable appellate review lies in the clearly erroneous standard. *United States v. Ehret*, 885 F.2d 441 (8th Cir.1989).

### A. Manufacture of Amphetamines.

■ James Burks was sentenced to 104 months of imprisonment. This sentence was calculated by the district court using the testimony of the undercover investigator, Steve Clemmons. Mr. Clemmons testified that Burks offered to sell him a drug lab for $50,000 that was capable of producing between seven or eight pounds of amphetamine. Section 2D1.4 (note 2) of the Federal Sentencing Guidelines provides that "where there is no drug seizure or the amount seized does not reflect the scale of the offense the sentencing judge shall approximate the quantity of the controlled substance" and "may consider the price generally obtained for the controlled substances ... and the size and capability of any laboratory involved." However, a review of the record of Investigator Clemmons' testimony at sentencing further reveals that

(a) no drug lab was ever shown to exist,

(b) no equipment of any kind nor any drugs were ever discovered,

(c) Investigator Clemmons never saw any drugs nor did he smell the distinct odor about Burks' person that usually persists on individuals involved with amphetamine production.

The trial court also concluded that no laboratory was found, that no location of the lab was ever given, and that Burks' had a propensity to exaggerate.

Furthermore, the Government's evidence showed that defendant Burks was to meet and obtain possession of even small amounts of the amphetamines and then transfer possession to the informant. Additionally, the Government acknowledges that Burks was to have obtained the amphetamines from his source and this procedure called for Burks to leave the money with his source and at a later time that same source of supply would inform Burks of the location of the amphetamines. These facts are not indicative of the course of conduct exhibited by one who owned a drug lab. We are concerned that in a case such as this, where the Government conducts an undercover investigation, inclusion of offenses that ostensibly stem from exaggerated and fabricated facts may in the future open the door for serious error.

It is important to note, although not required, that the presentence investigation by the probation officer also recognized the extremely tenuous nature of the inclusion of amounts of drugs involved derived from this discussion of an alleged drug lab. This Court cannot find clear and convincing evidence even of the existence of a drug lab. To sentence Mr. Burks on this minute amount of evidence, without more, would be unjust. We therefore hold that the Court's finding on any quantity of controlled substances exceeding six ounces was not supported by the evidence.

### B. Possession of Firearm.

Burks' final contention is that his offense level was improperly enhanced by two levels for the possession of a firearm during the commission of a drug offense.

Section 2D1.1(b)(1) provides for the enhancement of two levels if a dangerous weapon was possessed during the commission of the offense in question. The Government contends that subsequent to his arrest, a search of defendant Burks' home revealed a 9 mm. semi-automatic machine pistol with three loaded clips capable of holding at least 30 rounds each, which was found under the defendant's bed. Furthermore, in a tape recorded conversation of January 11, 1989, Burks stated that he would not hesitate to use a weapon during this drug transaction.

The appellant Burks argues that all of the conversations concerning any drug purchases with the informant occurred outside Burks' residence. Moreover, the appellant argues that at the time of Burks' arrest, Burks was headed away from his residence and any gun found in his home could not have been related to the instant drug transaction.

The trial court's application of the guidelines will be given due deference by the reviewing court. *Ehret*, 885 F.2d at 444 (8th Cir.1989).

Furthermore, the Government need not prove facts used in sentencing under the Guidelines beyond a reasonable doubt. *Id.* at 444.

Therefore, having carefully reviewed the record as a whole, we cannot say this finding is clearly erroneous and we affirm the two-level enhancement.

For the reasons given, we affirm the verdict of the jury for a conviction as to the count charged and the finding that Burks' possession of a firearm during a drug offense was not clearly erroneous. We reverse the district court's findings on the issue of the quantity of amphetamines to be included in Burks' baseline offense level, and remand for proceedings otherwise consistent with this opinion.

BOWMAN, Circuit Judge, concurring in part and dissenting in part.

I concur in the result reached in Parts II., III., and IV.B. of the Court's opinion. I cannot agree, however, with the conclusion reached in Part IV.A., in which the Court holds that the district court's finding on any quantity of controlled substances exceeding six ounces was not supported by the evidence.

Having carefully reviewed the evidence that was before the district court, I do not believe it can be said that its finding that Burks was responsible for seven pounds of amphetamine is clearly erroneous. In addition to the testimony of Investigator Clemmons regarding Burks' offer to sell him a laboratory, with chemicals, capable of producing seven or eight pounds of amphetamine, there is also the testimony of Terry Day that he had been dealing drugs with Burks for approximately two years and that Burks was the source of those drugs. Further, there is the evidence concerning Burks' involvement in the transportation of a 110–pound barrel of phenylacetic acid from New Jersey to the place of Burks' residence in Arkansas. Gene Bangs, a chemist from the Arkansas State Crime Laboratory, testified that 100 pounds of phenylacetic acid would produce anywhere from 25 to 70 pounds of amphetamine. On this record, it appears to me that the district court's finding that Burks should be sentenced on the basis of seven pounds of amphetamine represents a conservative estimate of the quantity of the controlled substance and is well supported by the evidence. I therefore would affirm the judgment of the district court in all respects and respectfully dissent from Part IV.A. of the Court's opinion.