UNITED STATES of America, Plaintiff,

v.

William McDERMOTT and Daniel McDermott, Defendants.

No. CR 92–1018.

United States District Court, N.D. Iowa, E.D.

March 15, 1993.

**ORDER**

MELLOY, Chief Judge.

This matter is before the court on the motions of the defendants to dismiss the indictment. The defendants have each filed motions to dismiss the indictment or portions of the indictment arguing that prosecution of this case abridges their rights to freedom of speech under the First Amendment of the United States Constitution. William McDermott requests dismissal of Count 2 of the indictment as well as all overt acts relating to cross-burning in Count 1. Daniel McDermott requests dismissal of the entire indictment. Daniel McDermott also filed a motion to dismiss the indictment on the grounds that the government impermissibly delayed commencing prosecution. William McDermott joined in that motion. The United States of America has resisted all of the motions to dismiss. The following opinion and order denies the defendants' motions to dismiss the indictment.

### *Statement of the Case*

On November 17, 1992, the grand jury returned a two-count indictment against William McDermott and Daniel McDermott ("the McDermotts"). Count 1 charged the McDermotts with conspiracy to injure, oppress, threaten, and intimidate African–American citizens in order to prevent them from enjoying the use of Comisky Park in Dubuque, Iowa, all in violation of 18 U.S.C. § 241[1]. Count 1 sets forth the overt acts alleged to have been taken in furtherance of the conspiracy which include yelling racial slurs and threats at African–Americans, brandishing weapons at African–Americans, and facilitating the burning of a large wooden cross in Comisky Park on or about the night

Deborah Sines, Maurice Suh, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, for plaintiff.

Michael Frey, Simmons, Perrine, Albright & Elwood, Cedar Rapids, IA, for defendant William McDermott.

Thomas O'Flaherty, O'Flaherty Law Firm, Cedar Rapids, IA, for defendant Daniel McDermott.

---

1. Section 241 states, in relevant part:
 If two or more persons conspire to injure, oppress, threaten, or intimidate any inhabitant of any State, Territory, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same;
 The United States alleges that the federal rights which the McDermotts interfered with are found at 42 U.S.C. § 2000a(a) which provides, in relevant part:

 (a) All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.
 The government contends that a public park is a public accommodation under § 2000a(a) and that the McDermotts conduct interfered with African–Americans rights to use the public park.

of April 1, 1988. Count 2 charged the McDermotts with willfully injuring, intimidating, and interfering with African–American persons because of their race and because they had been enjoying the benefit and use of Comisky Park, by force and threat of force consisting of burning a cross, and aiding and abetting the burning of a cross, all in violation of 18 U.S.C. § 245(b)(2)(B) and 18 U.S.C. § 2.[2]

The parties have filed a number of post-indictment motions in this case, including the defendants' motions to dismiss the indictment. The court held a hearing on all pending motions February 19, 1993. At the hearing, the court ruled on a number of pending motions but reserved ruling on the McDermotts' motions to dismiss the indictment on constitutional grounds and the McDermotts' motions to the dismiss the indictment due to impermissible delay in commencing the prosecution. The following text and order constitutes the court's ruling on these matters.

### Discussion

#### (1) Motion to Dismiss Under the First Amendment

The McDermotts both argue for dismissal of the indictment in this case on the grounds that the United States Government ("the United States" or "the government") attempts to prosecute them for their alleged participation in expressive conduct protected under the First Amendment of the United States Constitution. William argues that Count 2 of the indictment, which is directed only at allegations they participated in a cross-burning, should be dismissed in its entirety. William also argues that a portion of Count 1 should be dismissed to the extent it alleges cross-burning as a overt act taken in furtherance of the alleged conspiracy to intimidate or threaten African–Americans from using Comisky Park. William, however, acknowledges that the other overt acts alleged in Count 1, racial slurs and brandishing weapons, are not protected by the First Amendment and, therefore, he does not ask for dismissal of the indictment on First Amendment grounds to the extent that it addresses that conduct. Daniel argues that the entire indictment should be dismissed. While the relief they request differs to a small degree, their arguments for dismissal are essentially identical as Daniel has joined the arguments made by William in William's written brief and oral arguments at the hearing. Hence, the court will treat the motions as making the same argument.

The court begins by noting that "[i]n considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *U.S. v. Besmajian*, 910 F.2d 1153, 1154 (3rd Cir.1990) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n. 16, 96 L.Ed. 367 (1952)); *see also United States v. National Dairy Corp.*, 372 U.S. 29, 33 n. 2, 83 S.Ct. 594, 598 n. 2, 9 L.Ed.2d 561 (1963) (also citing *Boyce*); *U.S. v. Gilbert*, 813 F.2d 1523, 1529 (9th Cir.1987) (applying same standards to First Amendment challenge to an information). With these considerations in mind, the court turns to the constitutional arguments of the parties.

The McDermotts assert that cross-burning is expressive conduct which should be treated as speech under the First Amendment. They acknowledge that the relevant statutes, 18 U.S.C. § 241 and 18 U.S.C. § 245(b)(2)(B), are not on their face directed at cross-burning or any other specific message protected by the First Amendment. Instead, the McDermotts argue that these facially neutral statutes are being applied to them in this case to punish them for engaging in activity

---

2. Section 245(b)(2)(B) states:

(b) Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

(2) any person because of his race, color, religion or national origin and because he is or has been—

(B) participating in or enjoying any benefit, service, privilege, program, facility or activity provided or administered by any State or subdivision thereof;

The United States argues that the cross burning the McDermotts allegedly participated in was a threat of force directed at African Americans because they had exercised their rights to use the public park. Section 2 of Title 18 is the federal aiding and abetting statute.

which is entitled to protection under the First Amendment.

The McDermotts argue that the government's interest in applying these statutes against them is to suppress their freedom of expression. Moreover, they assert that the alleged cross-burning occurred in a public park, which is considered a traditional public forum for free s, _ech. Given these factors, the McDermotts contend that the government's application of these statutes against them must be subjected to the strictest scrutiny available under First Amendment standards. Under those strict standards, the McDermotts argue that the government's application of the statutes against them is impermissible under the First Amendment.

The McDermotts also have argued that 18 U.S.C. §§ 241 & 245(b)(2)(B) are impermissibly vague or overly broad under First Amendment principles. At the hearing, however, they acknowledged that these were secondary arguments and their primary argument focusses on the application of the statutes to them.

The United States argues that there is no First Amendment problem with the indictment and that dismissal on constitutional grounds is not warranted. The government contends that the indictment is aimed at threats and intimidation which are not protected forms of speech under the First Amendment. The government asserts that both sections 241 and 245(b)(2)(B) require the government to prove that the actions which are the subject of the indictment were undertaken by the McDermotts with the specific intent to threaten or intimidate African–Americans from exercising their rights to use the park (§ 241) or because they had used or were using the park (§ 245). The government asserts that this specific intent requirement avoids any potential First Amendment problems because it makes the government prove with specificity that it is aiming at conduct (threats and intimidation in this case) which does not fall under the protections of the First Amendment.

The government also opposes the McDermotts' attempt to characterize sections 241 and 245(b)(2)(B) as overly broad or unnecessarily vague. The government asserts that the specific intent requirement of each statute prevents it from being overly broad or unnecessarily vague. The government asserts that the statutes are limited in reach to behavior which is specifically intended to be threatening or intimidating and, therefore, it cannot be overbroad. Likewise, the government contends that the statutes give notice that conduct in any form which is specifically intended to threaten or intimidate could fall within the statute and, therefore, the statute cannot be unconstitutionally vague.

(A) First Amendment Right to Free Speech

The First Amendment to the United States Constitution states, "Congress shall make no law ... abridging the freedom of speech...." The freedom of speech provided under the First Amendment is a broad, but not absolute freedom. *U.S. v. Buttorff*, 572 F.2d 619, 623 (8th Cir.1978) (citing *Whitney v. Calif.*, 274 U.S. 357, 373, 47 S.Ct. 641, 647, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring)). The Supreme Court has developed an intricate set of tests to determine what speech is and is not subject to regulation under the First Amendment.

A leading commentator on constitutional law has observed that analysis of free speech questions under the First Amendment generally follows a "two track" approach corresponding to the two ways which governments can abridge free speech. L. Tribe, *American Constitutional Law* § 12–2, pp. 789–94 (2nd Ed.1988) (hereinafter "Tribe"). The first way government can abridge free speech is with regulations aimed at "communicative impact." *Id.* at 790. The second way government can abridge free speech is with regulations aimed at " 'noncommunicative impact' but nonetheless have adverse effects on communicative opportunity." *Id.* "If a government regulation is aimed at the communicative impact of an act" the analysis should proceed on what Professor Tribe calls *track one*. *Id.* Likewise, if the "regulation is aimed at the noncommunicative impact of an act" the analysis should proceed on what he characterizes as *track two*. *Id.* at 792.

■ The track one analysis often is referred to as strict scrutiny. Under strict scrutiny, the government has the burden of demonstrating either that the regulation falls in one of the narrow categories of expression which is unprotected by the First Amendment or that the regulation is necessary to achieve a compelling state interest. *Id.* at § 12–8, p. 833. The categories of speech which are not entitled to First Amendment protection include: "obscenity," *Roth v. U.S.,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); "defamation," *Beauharnais v. Illinois,* 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952); "fighting words," *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); and "advocacy of imminent lawless action," *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Of particular relevance to this case, some argue that "threats" of violence is another category of unprotected speech. *Watts v. U.S.,* 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (case dealing with threats against the President and observing that "[w]hat is a threat must be distinguished from what is constitutionally protected speech"). The rationale for these categories of unprotected speech is that:

the content of speech in a few limited areas, [is] 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'

*R.A.V. v. City of St. Paul,* —— U.S. ——, ——, 112 S.Ct. 2538, 2543, 120 L.Ed.2d 305 (1992) (quoting *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769). If in applying the strict scrutiny analysis the court determines that the expressive conduct does not fall in one of those categories, then the government must demonstrate that the regulation, or its application, is necessary to achieve a compelling governmental interest.

Under track two, the "government does not *aim* at ideas or information but seeks a goal independent of communicative content or impact, with the *indirect* result that the flow of information or ideas is in some significant measure constricted." Tribe, at § 12–23, pp. 977–78 (emphasis in original). As Professor Tribe observes:

Unless the inhibition resulting from such a content-neutral abridgement is significant, [the] government need show no more than a rational justification for its choice; and if equally effective alternatives are readily available to the speaker or listener, the inhibition is not deemed significant.

*Id.* at 982. The Supreme Court has adopted the test as laid out in *U.S. v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), for its "track two" analytical framework.

■ The particular analysis for First Amendment challenges to cross-burning prosecutions has been discussed very recently in two important cases. In *United States v. Lee,* 935 F.2d 952 (8th Cir.1991), *vacated in part, rehearing en banc, granted in part* (1991), a panel of the Eighth Circuit Court of Appeals addressed and rejected a number of First Amendment arguments against a cross-burning prosecution under 18 U.S.C. § 241. The McDermotts raise many of those same arguments in this case. The panel decision in *Lee,* however, was subsequently vacated the case and reheard before the entire Eighth Circuit on October 15, 1992. The vacated decision retains no precedential value and is not binding in the determination of this case. *Creighton v. Anderson,* 922 F.2d 443, 449 (8th Cir.1990) (citations omitted). The Eighth Circuit has yet to issue the en banc decision in *Lee.*

After the *Lee* panel decision and before the date of the en banc arguments, the United States Supreme Court decided a First Amendment challenge to a cross-burning prosecution in *R.A.V. v. City of St. Paul,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). In that case, the Supreme Court struck down under the First Amendment the following St. Paul city ordinance:

Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits

disorderly conduct and shall be guilty of a misdemeanor.

*R.A.V.,* —— U.S. at ——, 112 S.Ct. at 2541. While the Supreme Court "unanimously struck down the ordinance [it] splintered over the rationale." Amar, "The Case of the Missing Amendments: *R.A.V. v. City of St. Paul,*" 106 *Harv.L.Rev.* 124, 127 (1992). The majority opinion in *R.A.V.,* written by Justice Scalia, applied a strict scrutiny analysis and found that the ordinance was an invalid, content-based regulation which on its face discriminated based on content and viewpoint of the message. *R.A.V.,* —— U.S. at —— ——, 112 S.Ct. at 2547–50. Justice Scalia assumed for the sake of the argument "that all of the expression reached by the ordinance is prescribable under the 'fighting words' doctrine," —— U.S. at ——, 112 S.Ct. at 2542, but then found that because the ordinance only prohibited a small subset of "fighting words" it discriminated on the basis of content by singling out only those "fighting words" that the City found disagreeable. *Id.* at —— –– ——, 112 S.Ct. at 2547–49. The opinion went on to find that the City of St. Paul failed to demonstrate that this content discrimination is necessary to achieve a compelling interest. *Id.* at ——, 112 S.Ct. at 2550.

In an opinion concurring in judgment only, Justice White, joined by Justices Blackmun, O'Connor, and Stevens, criticized the rationale and support for the majority opinion. In part one of the concurrence, which Justice Stevens declined to join, Justice White found that the statute was permissibly aimed at a subset of the "fighting words" doctrine and that a statute may aim at a subset of an unprotected classification because, by definition, that subset is unprotected speech. Justice White then concluded, joined by all three others, that the St. Paul regulation could not be upheld on the basis that it was overbroad and reached beyond fighting words. Justice Stevens wrote a separate opinion, joined in part by Justices White and Blackmun, which also attacked the rationale of the majority. In a portion of the opinion which no others joined, Justice Stevens noted his distaste for categorical analysis of unprotected speech.

 The analysis in this case must differ to some degree from the analysis in *R.A.V.* First, the McDermotts main argument does not challenge the facial constitutional validity of either of the relevant statutes in this case; 18 U.S.C. §§ 241 & 245(b)(2)(B). The McDermotts essentially concede that these statutes are constitutional so long as they are applied properly. The McDermotts assert, however, that the government has applied these statutes in a manner that abridges the McDermotts' constitutional right to free speech. This is known as an "as applied" challenge instead of a "facial" challenge like petitioner made in the *R.A.V.* case.[3]

The second and more important difference is that there is no consensus in this case that the application of sections 241 and 245(b)(2)(B) to the McDermotts presents a content-based restriction implicating "track one" scrutiny. Such a consensus was present in the *R.A.V.* analysis. The McDermotts contend that "as applied" these statutes serve as content-based restrictions implicating track one. The government, on the other hand, asserts that the statutes are facially neutral and even "as applied" have only an incidental limitation on speech which is appropriately analyzed under content-neutral, track two standards. Hence, the first issue is what level of scrutiny should apply and only after that determination does the court reach the question of the consequences of the level of scrutiny applied.

This court will look to *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), which is commonly known as the "flag burning" decision. That case is somewhat

---

**3.** A statute or regulation is facially unconstitutional "only when it cannot validly be applied to any conduct." See *Brache v. County of Westchester,* 658 F.2d 47, 50 (2nd Cir.1981) (citing *U.S. v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975) & *Parker v. Levy,* 417 U.S. 733, 755, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439 (1974)) (other citations omitted). An "as ap-plied" challenge, however, is subject to a case-by-case analysis, *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 759, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988) (noting the "case-by-case nature of 'as applied' challenges"), to determine whether the regulation as applied to the facts of the case abridges the First Amendment.

similar to this case and resolves a First Amendment challenge to a criminal prosecution on an "as applied" theory [4] and devotes a good deal of analysis on how to determine the proper method of scrutiny. As one commentator recently noted, the *R.A.V.* decision clearly indicated that the principles and analysis of *Texas v. Johnson* continue to have vitality. Amar, 106 *Harv.L.Rev.* at 124–25 (noting that *R.A.V.* case garnered consensus that "*Johnson* lives!" and has been fixed "as a polestar in the First Amendment firmament.").

In *Texas v. Johnson,* Justice Brennan, writing for the majority, followed the two track analysis, articulating it as follows:

> We must first determine whether John-son's burning of the flag constituted expressive conduct, permitting him to invoke the First Amendment in challenging his conviction. *See, e.g., Spence v. Washington,* 418 U.S. 405, 409–411 [94 S.Ct. 2727, 2729–30, 41 L.Ed.2d 842] (1974). If his conduct was expressive, we next decide whether the State's regulation is related to the suppression of free expression. *See, e.g., United States v. O'Brien,* 391 U.S. 367, 377 [88 S.Ct. 1673, 1679, 20 L.Ed.2d 672] (1968); *Spence, supra* [418 U.S.], at 414, n. 8 [94 S.Ct. at 2732, n. 8]. If the State's regulation is not related to expression, then the less stringent standard we announced in *United States v. O'Brien* for regulations of noncommunicative conduct controls. *See O'Brien, supra* [391 U.S.], at 377 [88 S.Ct. at 1679]. If it is, then we are outside of *O'Brien's* test, and we must ask whether this interest justifies Johnson's conviction under a more demanding standard. *See Spence, supra,* [418 U.S.], at 411 [94 S.Ct. at 2730].

491 U.S. at 403, 109 S.Ct. at 2538 (footnote omitted).

Applying those standards to this case, this court must first determine if the McDermotts' alleged participation in the burning of a cross constituted expressive conduct permitting them to invoke the First Amendment to challenge the indictment. If the court finds that the conduct was expressive and triggers First Amendment analysis, the court must determine whether these statutes, as applied to the McDermotts, are related to the suppression of expression. If the statutes, as applied, are not related to suppression of expression, then the analysis outlined in *O'Brien* (i.e., track two) controls. If, however, the statutes, as applied, are related to the freedom of expression, then *O'Brien* does not control and instead the case is treated under strict scrutiny (i.e., track one).

■ Assuming, without deciding, that the McDermotts participated in a cross-burning,[5] the court first concludes that the act of cross-burning is expressive conduct sufficient to invoke the First Amendment, and begin the First Amendment analysis. There has been little if any dispute from the government that the act of cross-burning is expressive conduct. In *Texas v. Johnson,* the State of Texas essentially admitted that burning an American Flag is expressive conduct, and after a limited inquiry, the Supreme Court concluded that flag-burning "was conduct 'sufficiently imbued with elements of communication,' *Spence,* 418 U.S., at 409 [94 S.Ct. at 2729], to implicate the First Amendment." 491 U.S. at 406, 109 S.Ct. at 2540. This court finds that the alleged cross-burning likewise is "sufficiently imbued with the elements of communication to implicate the First Amendment." [6]

---

**4.** The Supreme Court stated in a footnote in *Texas v. Johnson* that "[a]lthough Johnson raised a facial challenge to the Texas flag-desecration statute, we choose to resolve this case on the basis that the statute as applied to him violates the First Amendment." 491 U.S. at 403 n. 3, 109 S.Ct. at 2538 n. 3.

**5.** The McDermotts have, at this point in the case, denied any involvement in burning a cross at Comisky Park or anywhere. The court only assumes without deciding that the McDermotts participated in a cross-burning for the purpose of

analyzing the McDermotts' First Amendment challenge to the indictment. This court does not intend to infer one way or the other about the McDermotts' involvement in the cross-burning. That question is left for the jury.

**6.** The alleged cross-burning in this case may differ in some important respects from the flag-burning in *Johnson* (i.e., the cross-burning, as alleged, was not performed at an overtly political demonstration). However, the court believes that the cross-burning contains the sufficient elements of communication to trigger First Amend-

The key question in this case becomes whether these statutes, as applied to the McDermotts on the facts alleged in this case, are related to the suppression of expression. The answer to this question will determine whether the court should apply the more lenient test for regulating expression announced in *O'Brien* or the more exacting standard of scrutiny on track one.

The McDermotts argue that the court should apply the strictest scrutiny in this case. They assert that this case is very much like *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). In *Brandenburg*, the Supreme Court reversed the conviction of a leader of a Ku Klux Klan group who had organized a rally where hooded figures, some carrying weapons, made derogatory comments and speeches, and burned a large wooden cross, all for the television cameras that the Klan leader had invited to the rally. The Klan members and news media people were the only people present at the rally which took place on a farm. Portions of the rally were broadcast on local stations and on a national network. In one of the intelligible portions of footage, the defendant made a speech in which he stated that if the suppression of the white race continued there "might have to be some revengeance taken." The Court treated the case under a track one analysis and found that the statute impermissibly punished advocacy of the use of force or violation of the law. The Court concluded that this type of speech is protected speech "except where [it] is directed to inciting or producing imminent lawless action and is likely to produce such action." *Brandenburg*, 395 U.S. at 447, 89 S.Ct. at 1829. The McDermotts contend that this court should treat this case under the standards announced in *Brandenburg*.

The government argues for track two scrutiny in this case. The United States alleges that threats do not constitute expression protected under the First Amendment. *Watts v. United States*, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969); *United States v. Mitchell*, 463 F.2d 187, 191 (8th Cir.1972),

cert. denied, 410 U.S. 969, 93 S.Ct. 1449, 35 L.Ed.2d 705 (1973). The United States argues that it seeks to regulate conduct, not speech and that the cross-burning is threatening conduct. The United States asserts that the Supreme Court has held on numerous occasions that the government may regulate conduct even if it has an effect on expression. *Barnes v. Glen Theatre*, —— U.S. ——, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (regulation of nude dancing permissible); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (city allowed to regulate adult movie theatres); *Employment Div., DHS of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (prohibiting peyote use permissible even where defendant used it in religious services). The United States believes this situation falls squarely within the contemplation of the Supreme Court's observation in *O'Brien* "that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest can justify incidental limitations on First Amendment freedoms." 391 U.S. at 367, 88 S.Ct. at 1673. The government asserts the interest it is pursuing (prosecution of threats) is unprotected conduct not related to the freedom of expression.

The government attempts to distinguish *Brandenburg* by asserting that it draws a line between cross-lighting and cross-burning. The government contends that a cross-lighting which communicates a message at a political rally is permissible conduct protected under the First Amendment, but that a cross-burning aimed at threatening African–Americans to intimidate them from using public accommodations is threatening conduct. The government alleges that the McDermotts participated in a cross-burning under the cover of night and fled the scene soon after lighting the cross. Hence, the government asserts that the McDermotts' conduct was not at a political or social rally and is sufficiently distinguishable from the conduct of the Klan in *Brandenburg*.

ment analysis. It should be noted that both the majority and dissenting opinions from the *Lee* panel decision agreed that cross-burning is ex-

pressive conduct sufficient to implicate First Amendment analysis.

The parties have made the level of scrutiny (track one v. track two) the central question in this motion to dismiss the indictment. In *Texas v. Johnson*, the Supreme Court determined the appropriate standard of scrutiny by providing guidance on when to apply the *O'Brien* analysis. The Supreme Court began by noting that "[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Texas v. Johnson*, 491 U.S. at 406, 109 S.Ct. at 2540 (citations omitted). The Court then noted, however, that "[a] law *directed at* the communicative nature of conduct must, like a law directed at speech itself, be justified by the substantial showing of need the First Amendment requires." *Id.* (citation omitted) (emphasis in original). The Court then pointed out "[i]t is . . . not simply the verbal or nonverbal nature of the expression, but the governmental interest at stake, that helps to determine whether a restriction on that expression is valid."

The Court then found that the question of *O'Brien's* applicability hinges largely on the characterization of the government's interest in enforcing the regulation. The Court stated that although the *O'Brien* decision:

> recognized that where " 'speech' and 'non-speech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms," we have limited the applicability of *O'Brien's* relatively lenient standard to those cases in which "the governmental interest is unrelated to the suppression of free expression."

*Texas v. Johnson*, 491 U.S. at 407, 109 S.Ct. at 2540 (quoting *O'Brien* ) (other citations omitted). The Court went on to emphasize "we have highlighted the requirement that the governmental interest in question be unconnected to expression in order to come under *O'Brien's* less demanding rule." *Id.* Under the standards set forth above, this court must determine whether the United States has asserted an interest in support of the indictment that is unrelated to the freedom of expression. Here, the United States has asserted that its interest in applying Sections 241 and 245(b)(2)(B) to the McDermotts is to prosecute and punish threats. The McDermotts, on the other hand, strenuously argue that the government is prosecuting them because cross-burning presents a message that the government does not agree with and seeks to suppress.

■ This court need not resolve which level of First Amendment scrutiny applies in deciding this motion to dismiss the indictment. Under either track one analysis or track two analysis the indictment, on its face, satisfies constitutional standards.

### (i) Track One Scrutiny

The McDermotts essentially have argued that the government's interest is "motivated by . . . an intent to single out constitutionally protected speech for control or penalty" which implicates a track one analysis. Tribe, at § 12–3, p. 794. Assuming, *arguendo*, that the government's interest in protecting against threats of racial violence is content-based,[7] the court must determine first if the threats are entitled to protection under the First Amendment, or if threats fall into a category of unprotected speech.

A number of courts have removed threats or threatening language from First Amendment protection by assigning threats to a category of speech not protected by the First Amendment. Some cases have treated threats of violence as "fighting words." *United Food & Commercial Workers Intl. Union v. IBP, Inc.*, 857 F.2d 422, 433–35 (8th Cir.1988) (interpreting state statute forbid-

---

7. The court believes such an assumption would have support in the law. As Justice White pointed out in his concurring opinion in *R.A.V.*, a statute aimed at prohibiting threats should be considered a content based restriction. —— U.S. at —— n. 10, 112 S.Ct. at 2556 n. 10 ("Indeed, [a law which prohibits threats against the President] is content based because it distinguishes between threatening and nonthreatening speech).

Other cases also have treated laws dealing with threats as content based and have tried to determine, under strict scrutiny principles, whether threats can fit into one of the categories of unprotected speech. *See, e.g., Watts v. U.S.*, 394 U.S. at 707, 89 S.Ct. at 1401 ("What is a threat must be distinguished from what is protected speech.")

ding use of "threatening language" by strikers to nonstrikers as prohibiting "fighting words" and thereby surviving constitutional challenge); *Howard Gault Co. v. Texas Rural Legal Aid, Inc.,* 848 F.2d 544, 561–63 (5th Cir.1988) (same); *United Steelworkers of America v. Dalton,* 544 F.Supp. 282, 286–87 (E.D.Va.1982) (same); *Vietnamese Fisherman's Ass'n v. Knights of the Ku Klux Klan,* 543 F.Supp. 198, 208 (S.D.Tex.1982) (noting that threats conveyed by military exercises of KKK were "fighting words" not protected under the First Amendment)[8]; *Collins v. Vitek,* 375 F.Supp. 856, 859 n. 5 (D.N.H.1974) (state prisoner's threats of violence in prisoner lock-up situation were "fighting words" and not protected speech so discipline based on those words not a violation of his constitutional rights). Other courts have suggested that threats constitute their own category of unprotected speech. *Watts v. U.S.,* 394 U.S. at 707, 89 S.Ct. at 1401 ("What is a threat must be distinguished from what is constitutionally protected speech."); *U.S. v. Mitchell,* 463 F.2d 187, 191 (8th Cir.1972) (violent threats in furtherance of scheme to extort money "are devoid of constitutional protection"); *Shackelford v. Shirley,* 948 F.2d 935, 938–39 (5th Cir.1991) (inmate convicted under telephone harassment statute not entitled to habeas relief because "threats made with the specific intent to injure and focussed on a particular individual easily fall into the category of speech deserving no first amendment protection."); *U.S. v. Orozco–Santillan,* 903 F.2d 1262, 1265–66 (9th Cir.1990) (in appeal of conviction for threatening a law enforcement officer court noted that "[a] 'true' threat, where a reasonable person will believe he will be subjected to physical violence upon his person, is unprotected by the first amendment."); *U.S. v. Khorrami,* 895 F.2d 1186, 1191–93 (7th Cir.1990) (in appeal of conviction for mailing threatening communications and making threatening telephone calls court found that letters and anti-semitic "wanted poster" were true threats and outside of constitutional protections for speech); *U.S. v. Kelner,* 534 F.2d 1020, 1025–27 (2nd Cir.1976) (threat to kill Yassar Arafat was

not protected speech under *Watts* ); *Masson v. Slaton,* 320 F.Supp. 669, 672 (N.D.Ga.1970) ("The right to free speech ... entitles an individual to advocate certain ideas regardless of their popularity, but does not extend to the threatening of terror, inciting of riots, or placing another's life or property in danger"). Some courts have even distinguished threats from the protected speech in *Brandenburg.* *U.S. v. Howell,* 719 F.2d 1258, 1260–61 (5th Cir.1983) (*Brandenburg* test applies to advocacy and not to threats like the threat in this case to kill the President); *McCalden v. California Library Ass'n,* 955 F.2d 1214, 1222 (9th Cir.1992) (*Brandenburg* and *NAACP v. Claiborne Hardware,* 458 U.S. 886, 927, 102 S.Ct. 3409, 3433, 73 L.Ed.2d 1215 (1982), involved advocacy at public speeches and not privately communicated threats which are not protected).

The McDermotts have argued that the cross-burning in Comisky Park cannot be treated as unprotected speech either as fighting words or as a threat. They argue that this case does not present "fighting words" because the cross was not burned in the yard of an African American, like it was in *R.A.V.,* for example. They also argue that the fact it was burned in a public park should indicate that it was public advocacy rather than "threats" or "fighting words." The court finds that looking to the context in which the cross-burning occurred in order to determine the nature of the message intended goes to factual matters that are beyond this motion to dismiss the indictment on its face.

As noted above, the court must accept the factual allegations in the indictment as true on a defense motion to dismiss before trial. *Besmajian,* 910 F.2d at 1154. The indictment alleges that the cross-burning was intended to threaten African–Americans and prevent them from exercising their federal rights. The court finds that because courts have treated "true threats" as expression that falls outside of First Amendment protection, the indictment, even under a track one analysis, survives constitutional challenge.

**8.** The *Vietnamese Fisherman's* case went on to hold that even if the KKK's actions were protected speech, they could be regulated under

*O'Brien's* track two analysis. 543 F.Supp. at 208.

The McDermotts have focussed their attention on the nature of the conduct as a dispositive issue in this case. The case law is clear that "true threats" must be distinguished from hyperbole. *Watts,* 394 U.S. at 708, 89 S.Ct. at 1401. The case law is also clear that the context in which the expressive conduct takes place goes a long way to determining whether it constitutes a threat. *Shackelford,* 948 F.2d at 938 (*Watts* case indicated that courts should "distinguish between punishable threats and constitutionally protected speech by narrowing its focus to the context of the speech."); *Martin v. U.S.,* 691 F.2d 1235, 1240 (8th Cir.1982) (key question is whether a person familiar with the context would interpret it as a threat); *see also Khorrami,* 895 F.2d at 1192–93 (citing *Martin* and *U.S. v. Hoffman,* 806 F.2d 703, 706 (7th Cir.1986)). "The question of whether language constitutes a threat is a question for the jury." *Martin,* 691 F.2d at 1240.

The United States points out that it is required to prove that the McDermotts specifically intended the cross-burning they allegedly participated in to convey a threatening or intimidating message designed to discourage African–Americans from using Comisky Park. The government argues that this requirement that it prove specific intent to threaten prevents application of the statute from being unconstitutional. Essentially, the government argues that the specific intent element prevents the possibility of unconstitutional convictions because the requirement limits the government's ability to obtain convictions to only a non-protected form of speech—threats. A number of other courts have found that specific intent to threaten is a key component to determining a "true threat" and, therefore, an important part to making the prosecution constitutional. *Shackelford,* 948 F.2d at 938–39 (noting that statute requiring threat to be made with specific intent to injure precludes statute from reaching protected communications); *U.S. v. Gilbert,* 813 F.2d 1523, 1529 (9th Cir.1987) ("statute's requirement of intent to intimidate serves to insulate the statute from

unconstitutional application to protected speech").

This court also finds that the requirement of specific intent to threaten will go a long way towards insuring constitutionality of the prosecution under a strict scrutiny approach. Based on the legal standards laid out above, and interpreting the factual allegations in the indictment as true, the court concludes that under track one scrutiny the indictment should not be dismissed on constitutional grounds.

#### (ii) *Track Two Scrutiny*

If the court accepted the government's assertion that its interest in prosecuting this case is unrelated to freedom of expression and applied the *O'Brien* test (a track two analysis) to determine constitutionality, the court would reach the same conclusion.[9] Under *O'Brien:*

> a government regulation is sufficiently justified if it is [1] within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; [4] and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377, 88 S.Ct. at 1679. Element three of this test is satisfied here when the court assumes that this case can be analyzed on track two. *See Texas v. Johnson,* 491 U.S. at 407, 109 S.Ct. at 2540 (*O'Brien's* track two analysis used only if court finds that government's interest is unrelated to free expression). Elements one and two also are satisfied. The McDermotts have not argued the government lacks the constitutional power to enforce its interest in punishing threats aimed at discouraging African–Americans from using public parks. Similarly, they do not argue that enforcing these statutes against such threats does not further an important governmental interest.

9. The court points out that both the majority and dissenting decisions in the *Lee* panel decision analyzed the government's interest in applying 18 U.S.C. § 241 to cross-burning under the more lenient *O'Brien* test. The Ninth Circuit also analyzed a case addressing threats against minority groups in violation of the Federal Housing Act under the *O'Brien* test. *Gilbert,* 813 F.2d at 1529.

The McDermotts, however, have argued very strenuously that the fourth element of the *O'Brien* test is not satisfied here and cannot be satisfied. They assert first that it is difficult, if not impossible, to separate the threatening message conveyed by a cross-burning from the protected message. *See Brandenburg*, 395 U.S. 444, 89 S.Ct. 1827. They acknowledge that the Supreme Court has found "that when 'speech' and 'non-speech' elements are combined in the same course of conduct, a sufficiently important governmental interest can justify *incidental* limitations on First Amendment freedoms." *O'Brien*, 391 U.S. at 367, 88 S.Ct. at 1673 (emphasis added). The McDermotts contend that the limitations on speech, however, are not incidental.

Incidental is defined as "occurring as a fortuitous or minor concomitant." *The American Heritage Dictionary of the English Language*, p. 665 (1976). The McDermotts assert essentially that the government's application of sections 241 and 245(b)(2)(B) presents neither a fortuitous nor a minor restriction on protected speech. They find support for their contention that it is nearly impossible to separate the intent to threaten from intent to convey a protected message under the First Amendment in Chief Judge Arnold's dissent in the panel decision in *Lee* where he stated:

> I suggest that a great deal of speech is sufficiently forceful or offensive to inhibit the free action or persons against whom it is directed, in the sense that it would make someone hesitate before acting in a certain way. Indeed, that is the very purpose of speech: to influence others' conduct.

*United States v. Lee*, 935 F.2d 952, 959 (8th Cir.1991) (vacated and reheard *en banc*). The McDermotts assert that there is always an element in cross-burnings which may be perceived as a threat which makes African–Americans hesitate to act in a certain manner but all cross-burnings cannot be regulated. They contend that regulating the "threatening" component will necessarily swallow up the protected message which cross-burning conveys. They further point out that in *Brandenburg* and *NAACP v. Claiborne Hardware*, 458 U.S. 886, 927, 102

S.Ct. 3409, 3433, 73 L.Ed.2d 1215 (1982), threats accompanied and were even a part of the speech which the Supreme Court found was protected.

The government contends again that the indictment takes aim at conduct specifically intended to threaten and that any restriction on protected speech is incidental on the facts of this particular case. The government again points out that it must prove specific intent to threaten which prevents the prosecution from reaching protected conduct.

In the context of a track two analysis, this specific intent argument is not nearly as satisfying. Where the concern is the incidental effect on a portion of protected speech, the specific intent requirement does not help to determine what amount of protected speech is effected. If, for example, a person had a specific, but mixed intent to burn a cross both to make a political statement and to convey a threat, the specific intent requirement for threats would not help determine whether there was more than an incidental effect on protected speech. Hence, the court does not find that the specific intent requirement provides any guarantee of a constitutional prosecution because it provides little, if any, help in identifying when impact on protected speech is incidental.

This court, however, need not resolve whether the effects on protected speech are incidental in the context of this pretrial motion to dismiss the indictment. The indictment alleges only that the McDermotts participated in a cross-burning with the intention of threatening or intimidating African–American citizens from using Comisky Park. The indictment does not allege that the McDermotts had any intention other than to threaten and intimidate African–Americans with the purpose of keeping them from using public accommodations. Taking the facts alleged in the indictment to be true, the only message the McDermotts intended to convey was a threat of racial violence. As threats of racial violence are not a form of protected speech, there is no incidental effect on protected speech at all and, therefore, no facial

constitutional deficiency in the indictment.[10]

### (iii) *Public Forum Scrutiny*

The McDermotts also have argued that the court should apply a stricter scrutiny to this case because the cross burning took place in a public park, which has long been considered a traditional public forum for free speech activity. As Professor Tribe notes, courts use a higher standard where the speech activity takes place in areas that play a vital role in communication. Tribe, at § 12–24, p. 987. As the Supreme Court noted in *Frisby v. Schultz,* 487 U.S. 474, 479, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988), "[t]o ascertain what limits, if any, may be placed on *protected speech,* we have often focused on the 'place' of that speech, considering the nature of the forum the speaker." (emphasis added). In these cases it is generally assumed that the expressive conduct is protected speech and then the issue focusses on the attempt to regulate either the content of the speech which may be delivered in that forum or the time, place, and manner in which, or at which, the speech may be delivered in that forum. The regulation usually is a forum-based or forum-specific restriction.

The McDermotts do not argue that the relevant statutes or their application to the McDermotts serve as *forum-based* restrictions. The McDermotts' public forum arguments, relating to the fact that the alleged cross-burning occurred in a public park, are really arguments about whether the cross-burning properly can be characterized as a threat. The McDermotts have argued that the fact the cross was allegedly burned in the park, a public forum, indicates that it should be treated as a public statement more than as a threat directed at specific persons. The court finds that these arguments go more to factual proof of intent and not to the legal issue of whether a forum-based standard of scrutiny applies.

However, even assuming, *arguendo,* that the forum-based scrutiny applied, it would have very little practical effect on the resolution of this pretrial motion to dismiss. The public forum cases have provided differing levels of scrutiny depending on whether the governmental interest at issue in the regulation, or in applying it, is content based or content neutral. As the Supreme Court noted in *Frisby v. Schultz,* in public forum cases "the appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content." 487 U.S. at 481, 108 S.Ct. at 2501 (citing *Perry Education Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). Where the government regulation is directed at the content of the speech (i.e.,—content based) then the government "must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Education Assn.,* 460 U.S. at 45, 103 S.Ct. at 955 (citing *Carey v. Brown,* 447 U.S. 455, 461, 100 S.Ct. 2286, 2290, 65 L.Ed.2d 263 (1980)). When the regulation is not directed at the content of the speech (i.e.,—content neutral) the level of scrutiny is less severe and directed at "whether the ordinance is 'narrowly tailored to serve a significant government interest' and whether it 'leaves open ample alternative channels of communication.' " *Frisby,* 487 U.S. at 482, 108 S.Ct. at 2501 (quoting *Perry,* 460 U.S. at 45, 103 S.Ct. at 955).

As noted above, the court essentially has applied both of these tests in running through the track one and track two analyses. In *Texas v. Johnson,* the Court noted that it applied the "most exacting scrutiny" and cited to *Boos v. Barry,* 485 U.S. 312, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988), which applied the public forum strict scrutiny test. Hence, the Supreme Court appears to treat 'public forum' strict scrutiny and non-public forum strict scrutiny as the same "exacting" test. Likewise, this court finds that the content neutral public forum test already is subsumed in the four-part *O'Brien* test. In particular, the court finds that elements two and four of the *O'Brien* test essentially encompass the public forum test. In reaching this conclusion the court first points out that

---

**10.** Any further arguments the McDermotts have made on these issues depend on factual support as they are not supported by the face of the indictment. These arguments may be reasserted upon a proper showing at trial.

the conduct prosecuted in *O'Brien*, burning a draft registration card, took place at a public forum—the steps of a courthouse. Second, Chief Judge Arnold characterized the fourth element of the *O'Brien* test as a "narrowly tailored" requirement. *Lee*, 935 F.2d at 959. Hence, the public forum analysis would add little at this point in this case as it is already largely accounted for in the other tests.

Moreover, the court must assume, based on the face of the indictment that the McDermotts' alleged participation in the cross-burning was for the purpose of threatening African–Americans. With that as a given in analyzing this motion, it would not effect the analysis on either track one or track two by adding a "narrowly tailored" requirement to account for the public forum. If the cross-burning is simply unprotected speech, its regulation cannot be unconstitutional under track one by adding an additional narrow tailoring requirement. Likewise, under the track two analysis if the cross-burning is solely unprotected speech, then it does not have a protected speech element that may be incidentally effected. Hence, this court concludes that even if the public forum standards applied to this case, they would have little if any effect on the outcome of this decision.

(B) Overbreadth and Vagueness

■ The McDermotts also have argued that sections 241 and 245(b)(2)(B) are, under constitutional standards, either overly broad or impermissibly vague in being applied to them. The government argues that the fact each statute requires the government to prove specific intent to threaten prevents each of the statutes from being overly broad or impermissibly vague. The court concludes that the facial language of these statutes, as well as the court imposed requirement of proof of specific intent to threaten, prevents these statutes from being overly broad or impermissibly vague.

■ A statute is unconstitutionally overbroad when it " 'does not aim specifically at evils within the allowable area of government control, but sweeps within its ambit other activities that constitute an exercise' of protected expressive or associational rights."

Tribe, § 12–27, p. 1022 (quoting *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S.Ct. 736, 742, 84 L.Ed. 1093 (1940)). In *Osborne v. Ohio*, the Supreme Court pointed out that:

> In our previous decisions discussing the First Amendment overbreadth doctrine, we have repeatedly emphasized that where a statute regulates expressive conduct, the scope of the statute does not render it unconstitutional unless its overbreadth is not only 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.' *Broadrick v. Oklahoma*, 413 U.S. 601, 615 [93 S.Ct. 2908, 2917, 37 L.Ed.2d 830] (1973). Even where a statute at is margins infringes on protected expression, 'facial invalidation is inappropriate if the remainder of the statute covers a whole range of easily identifiable and constitutionally prescribable conduct.' *New York v. Ferber*, 458 U.S. 747, 770 n. 25 [102 S.Ct. 3348, 3362 n. 25, 73 L.Ed.2d 1113] (1982).

495 U.S. 103, 112, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98 (1990). It is apparent to this court that a statute is overly broad only if it "reaches a substantial amount of constitutionally protected conduct." *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

Here, the court finds that the statutes do not reach a substantial amount of constitutionally protected conduct. The statutes take aim at threats and intimidation which, as noted above, do not constitute constitutionally protected conduct. Hence, on its face, the statute cannot reach constitutionally protected conduct.

Courts have further insured that these statutes cannot reach constitutionally protected conduct by requiring that the government prove that the defendants specifically intended to threaten. This ensures the statute will not sweep under its ambit constitutionally protected expression that was never intended to threaten, but nonetheless, was perceived as threatening. In *R.A.V.*, Justice White recognized in his concurring opinion that "[w]hen a federal court is dealing with a federal statute challenged as over broad, it

should ... construe the statute to avoid constitutional problems, if the statute is subject to a limiting construction." —— U.S. at ——, 112 S.Ct. at 2558 (quoting *Ferber,* 458 U.S. at 769, n. 24, 102 S.Ct. at 3361, n. 24). In this case, the specific intent requirement which courts have read into these statutes prevents any potential that the statute could become overly broad in a particular application to any defendants.

■ A statute is impermissibly vague and unconstitutional "if it is so vague that persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Tribe, § 12–31, p. 1033 (quoting *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). The Supreme Court observed in *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, 1246–47, 39 L.Ed.2d 605 (1974), interpreting a flag-desecration statute, that the due process doctrine of vagueness "incorporates notions of fair notice or warning" and "it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." The McDermotts assert here that the statutes give no notice that cross-burning is illegal conduct and these statutes allow law enforcement officials to target activity they disapprove of, like cross-burning, for prosecution.

This court rejects these arguments. The McDermotts are not being prosecuted for cross-burning. They are being prosecuted for making threats of racial violence against African–Americans. The government alleges that cross-burning was only a manifestation of the threats. The United States essentially argues that cross burning was one of the mediums within which the threatening message was delivered. The statute gives specific notice and warning that threats conveyed through any medium are subject to prosecution.

Again, the specific intent requirement narrows the statute to apply only to cases where the government proves that the defendants specifically intended to threaten. This requirement prevents law enforcement officials from enforcing these statutes according to their prejudices or biases. Law enforcement

can only pursue conduct which they can demonstrate was specifically intended to threaten, and which falls squarely under the language of the statutes. Likewise, the specific intent requirement prevents the triers of fact from deciding the case on bias or prejudice. Therefore, the court concludes that this indictment need not be dismissed on either overbreadth or vagueness concerns.

**(2)** *Motion to Dismiss for Delay in Commencing Prosecution*

Daniel McDermott argues that under the Fifth Amendment due process clause and Rule 48(b) of the Federal Rules of Criminal Procedure, the indictment should be dismissed because the government impermissibly delayed in bringing the indictment in this case. Daniel argues that the delay was impermissible for two reasons. First, he contends that the government brought the indictment nearly five years after the alleged offense was committed and that memories and other evidence have grown stale. Second, Daniel argues that the delay in bringing the indictment prejudiced him because he lost the special protections afforded under the Juvenile Delinquency Act, 18 U.S.C. §§ 5031–5042. Daniel points out that he was 16 years old when the alleged offense was committed and the charge was presented to the grand jury well after his 21st birthday. William McDermott joins in this motion for dismissal, although Daniel's arguments regarding the Juvenile Delinquency Act do not apply equally to William. The government argues that dismissal for pre-indictment delay is not warranted under the facts or legal standards governing this case.

■ "[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay ... caused substantial prejudice to [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *U.S. v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) (citations omitted). "[T]o meet [the] heavy burden of establishing actual prejudice, [defendants] must prove that the preaccusation delay substantially prejudiced [their] de-

fense." *U.S. v. Meyer*, 906 F.2d 1247, 1251 (8th Cir.1990) (citing *U.S. v. Scott*, 795 F.2d 1245, 1249–50 (5th Cir.1986)). The defendants also must prove "that the government intentionally delayed either to gain a tactical advantage or to harass" them. *Meyer*, 906 F.2d at 1251 (citing *U.S. v. Lovasco*, 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977)) (other citation omitted).

The court first notes that the *Marion* case indicates that this motion is more appropriately reviewed after the trial. As the court noted in *Meyer*, courts normally first inquire into whether the defendants were prejudiced by the delay, except where the evidence does not "even come close to demonstrating, that the government intentionally delayed with the purpose of harassing [them] or gaining a tactical advantage." 906 F.2d at 1251. Here, even if the court were to assume, *arguendo*, that some delay occurred, the defendants have produce absolutely no evidence that the government intentionally delayed the indictment either to gain a tactical advantage or to harass them. There is no evidentiary record developed outside the indictment and, as noted repeatedly above, the court does not look beyond those facts at this point in the case. The indictment reveals that a period of more than four years elapsed between the alleged conduct and the indictment, but mentions nothing about prejudice. Hence, the court finds that the motion to dismiss the indictment for pre-accusation delay is not appropriately supported on the standard for deciding this motion.

## ORDER

IT IS THEREFORE ORDERED that the defendants' motion to dismiss the indictment is denied.

Done and Ordered.